UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| **BERNADINE POPPENS,**<br><br>Plaintiff,<br><br>vs.<br><br>**ARCH INSURANCE COMPANY,**<br><br>Defendant. | CASE NO. 20-1012<br><br><br>**COMPLAINT AND JURY DEMAND** |

**COMES NOW** the Plaintiff, Bernadine Poppens, to file this Complaint and Jury Demand against the Defendant, Arch Insurance Company, and in support thereof, Plaintiff states as follows:

## INTRODUCTION

1. This is an action brought to redress the economic injury suffered by Plaintiff as a result of Defendant's breach of contract following a medical emergency, which required an emergency evacuation flight from Chiang Mai, Thailand to the United States.

## PARTIES

2. Plaintiff Bernadine Poppens (hereinafter referred to as "Poppens") at all times material was a citizen and resident of Parkersburg, Iowa.

3. Defendant Arch Insurance Company (hereinafter referred to as "Arch") is an insurance agency with its principal place of business located at 210 Hudson St., Suite 300, Jersey City, New Jersey, 07311-1107, with said company being incorporated outside the State of Iowa.

1

## JURISDICTION

4. The Court has diversity jurisdiction over this matter because the Plaintiff and Defendant are diverse in that each is a citizen of a different state. In addition, the amount in controversy exceeds $75,000. Jurisdiction is based on 28 U.S.C. § 1332.

5. Venue is appropriate in this judicial district pursuant to U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this jurisdiction.

## GENERAL ALLEGATIONS

6. Poppens purchased a trip through Overseas Adventure Travel ("hereinafter referred to as OAT") to travel to Southeast Asia during 2018.

7. In addition to purchasing her travel package through OAT, Poppens purchased an insurance policy labeled "A394G Part-B short-term travel insurance" (hereinafter referred to as "Arch Plan") administered through Trip Mate, Incorporated (hereinafter referred to as "Trip Mate") and underwritten by Arch.

8. Poppens' policy with Arch included, but was not limited to, travel protection benefits and maximum coverage in the following:

    a. Trip Interruption — 150 % of Trip Cost;

    b. Travel Delay (12 hours or more) — $300 per day / up to $1,500 total;

    c. Missed Connection — $1,500;

    d. Accident & Sickness Medical Expenses — $50,000;

    e. Emergency Medical Evacuation & Repatriation — $500,000;

f. Dental Expenses — $750;

   g. Baggage and Personal Effects — $3,000;

   h. Baggage Delay — $250 per day / up to $1,000 total; and

   i. Accidental Death & Dismemberment — $25,000.

9. On or about January 24, 2018, Poppens departed from the United States to Southeast Asia. Poppens was scheduled to return to the United States on February 20, 2018.

10. Soon after the departure, Poppens arrived in Southeast Asia.

11. On or about February 10, 2018, Poppens fell ill and was transported to the Chiangmai Ram Hospital (hereinafter referred to as "CRH") in Chiang Mai, Thailand.

12. Chiang Mai, Thailand is a city of approximately 160,000 citizens in the mountainous region of northwest Thailand, approximately 450 miles north of Bangkok.

13. Once Poppens arrived at CRH, she was placed in intensive care and was found to be weak with chest pressure and a high pulse. Her blood pressure was low and she was spitting up blood.

14. On or about February 11, 2018, staff at CRH performed an upper endoscopy procedure which revealed a gastric submucosal mass (identified more specially as a gastrointestinal stromal tumor).

15. The medically necessary treatment for a symptomatic stromal tumor is surgery to remove it.

16. Poppens' tumor was so vascularized and was situated in Poppens' fundus in such a way that no surgeon at the CRH had ever done such a procedure.

17. A general surgeon at the CRH, however, proposed to remove the tumor.

3

18. The general surgeon was not an oncological surgeon and only had limited experience with the procedure proposed.
19. The risk associated with the removal of said tumor with an inexperienced surgeon was significant and unreasonable.
20. No adequate medically necessary treatment was available to Poppens at CRH or otherwise in her immediate area.
21. On or about February 12, 2018, a doctor at CRH completed a "Medical Certificate for Air Travel," which indicated that Poppens was fit for air travel given proper accommodations.
22. On or about February 14, 2018, the same doctor at CRH signed a One Call International (an affiliate of Arch) form indicating Poppens' fitness for travel that same day.
23. Arch, through its agents, affiliates, and/or claims administrators, including TripMate, Inc. and One Call International, refused to make travel arrangements to the United States until Poppens was stabilized — thus conditioning transport on Poppens actually undergoing the necessary surgery, regardless of its adequacy.
24. Soon thereafter, forced by Arch into this situation, Poppens' family made emergency evacuation accommodations for the pickup and drop off of Poppens via REVA air ambulance. These accommodations included a 12 hour flight with an onboard physician, nurse, and paramedic.
25. Poppens paid $218,760.00 out of her pocket for the emergency medical evacuation via REVA air ambulance.
26. Poppens' health insurance paid $47,715.89 toward the costs associated with Poppens' emergency evacuation.
27. Poppens is still out of pocket $171,044.11 for the REVA evacuation.

## BREACH OF CONTRACT

28. An enforceable contract (hereinafter referred to as "Insurance Contract") between Poppens and Arch existed at the time of the emergency medical evacuation.

29. The Insurance Contract was supported by mutual assent (offer and acceptance) and valid consideration.

30. Arch possesses no valid defenses to the Insurance Contract.

31. The insurance contract covered costs—up to $500,000—associated with a medically necessary emergency evacuation.

32. Poppens' emergency evacuation was medically necessary and it was covered under the Insurance Contract.

33. All conditions requiring Arch to pay emergency medical evacuation benefits under the policy were satisfied.

34. Arch breached the Insurance Contract by denying coverage and/or benefits and later refusing to fully reimburse Poppens and to repay Poppens' health insurance carrier.

35. Poppens suffered economic damages in the amount of no less than $171,044.11 as a result of Arch's breach, plus the amount paid by Poppens' health insurance carrier.

**WHEREFORE**, Plaintiff Bernadine Poppens prays for judgment against Defendant Arch Insurance Company in an amount that will fully and fairly compensate her for her injuries and damages; for attorneys' fees; for interest and costs as allowed by law; and for such other and further relief as may be just in the circumstance.

## JURY DEMAND

Plaintiff Bernadine Poppens hereby requests a jury trial on all issues raised by this Complaint and Jury Demand.

Respectfully Submitted,

BY: /s/ Chad A. Swanson

Chad A. Swanson, AT0007770
Dutton Daniels, Hines, Kalkhoff,
Cook & Swanson, P.L.C.
3151 Brockway Road
P.O. Box 810
Waterloo, IA 50704
319-234-4471
319-234-8029 – Fax
cswanson@duttonfirm.com
*ATTORNEYS FOR PLAINTIFF*